IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES ALAN ROSS, *

   Petitioner *

v. * CIVIL NO. JKB-11-1672

WARDEN JOHN S. WOLFE *et al.*, *

   Respondents *

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

*I. Background*

Petitioner James Alan Ross *pro se* filed a petition for a writ of habeas corpus, contesting the constitutionality of his Maryland state court conviction and sentence for four counts of first-degree assault. (Petition, ECF No. 1.) After receipt and review of the State's response to the show-cause order, as well as supplemental filings by Ross, the Court issued a lengthy opinion addressing most of the issues in the case and denied in part and held in abeyance in part Ross's petition. (ECF Nos. 18, 19.) Concern about the remaining undecided issues prompted the Court to grant Ross's motion for appointment of counsel and to appoint the Federal Public Defender for Maryland to represent Ross going forward. (*Id.*) Both Ross, through appointed counsel, and the State then filed supplemental briefs. (ECF Nos. 31, 36.) No hearing is necessary. Local Rule 105.6 (D. Md. 2011). Upon the conclusions that counsel rendered ineffective assistance when he lied to his client in order to persuade him to accept a plea bargain, and that this ineffective assistance rendered the later guilty plea involuntary, the petition will be granted.

## II. *Standard for the Writ of Habeas Corpus*

The federal habeas statute, 28 U.S.C. § 2254, as amended, provides a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). *See also Bell v. Cone*, 543 U.S. 447, 455 (2005). This "highly deferential" standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). Petitioner carries the burden of proof to meet this standard. *See Pinholster*, 131 S. Ct. at 1398. Even so, "deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Section 2254 provides:

d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d)(1) and (2) (amendments enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant

2

the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The AEDPA amendments to 28 U.S.C. § 2254 require this Court to limit its analysis to the law as it was "clearly established" by precedent at the time of the state court's decision.[1] *Pinholster*, 131 S. Ct. at 1399.

Thus, under the "unreasonable application" prong, "a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotation marks and citations omitted). To be "unreasonable," the state court's application of Supreme Court precedent must have been more than incorrect or erroneous. *Id.* "The state court's application must have been 'objectively unreasonable.'" *Id.* (citing *Williams*, 529 U.S. at 409).

The Supreme Court has also articulated the standard for review of state-court factual determinations:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2). . . A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

---

[1] Last year, the Supreme Court examined whether counsel was ineffective in failing to communicate a prosecutor's written plea offers prior to their expiration, where the defendant subsequently incurred another arrest just before pleading guilty to the original charge without an underlying plea agreement and received a sentence substantially greater than that contemplated in the written plea offer. *See Missouri v. Frye*, 132 S. Ct. 1399, 1404 (2012). The *Frye* decision is inapplicable to the facts of this case and in any event would not constitute "clearly established" precedent at the time the state postconviction decision was rendered.

3

*Miller-El*, 537 U.S. at 340, 341-48 (casting doubt on state postconviction court's credibility determination as to prosecutorial discrimination in jury selection when strong, objective evidence was at odds with credibility determination).

Thus, under AEDPA, a state court's conclusion that a defendant received effective assistance of counsel or entered a knowing, voluntary, and intelligent guilty plea may be incorrect, but a federal court may not grant habeas relief unless the state court's determination was either "contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

## III. *Exhaustion*

In the State's original response to the show-cause order it was stated, "Respondents read Ross's petition to be raising claims that were raised and developed previously in state court." (Resp. 14, ECF No. 9.) Although Respondents added some perfunctory disclaimer language about not waiving exhaustion and advocating dismissal for lack of exhaustion "[i]f it is found that Ross intends to proceed on a claim or factual basis not previously developed in state court" (*id.*), the Court reasonably construed the original response as conceding exhaustion for the issues raised by Ross in his federal habeas petition.

In its supplemental response, however, the State has advanced an argument to the effect that Ross's precise claim for habeas relief was not raised in state courts and should be dismissed as unexhausted. Specifically, although Ross had earlier claimed ineffective assistance of counsel, his claim was premised upon counsel's advice to Ross that he would serve only ten years in prison, thereby giving Ross misleading advice for him to consider in deciding whether to plead guilty. (Supp. Resp. 7, ECF No. 36.) The State now contends that the Court's focus on defense counsel's misleading advice as to the prosecutor's expectation of what sentence Ross

4

was likely to receive and how it was to be executed is a different claim that was not exhausted. (*Id.*)

The State seeks to put too fine a point on the exhaustion doctrine. Notably, it cites no authority to support its argument. And Supreme Court precedent unequivocally refutes the State's contention. In *Picard v. Connor*, 404 U.S. 270 (1971), the Court stated that the substance of a federal habeas claim must first have been fairly presented to the state courts. *Id.* at 275, 278. *See also Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) ("both the operative facts and the controlling legal principles must be presented to the state court" (internal quotation marks omitted)). But the *Connor* Court noted that if the ultimate legal theory has been articulated to the state court so that it can apply controlling legal principles, then it matters not whether a particular variation of that legal theory is articulated. 404 U.S. at 277. In the *Connor* case, the petitioner claimed an invalid indictment in state court was a violation of due process, but claimed in federal court that an indictment unlawfully discriminated against him and, thus, was a violation of equal protection. *Id.* at 277-78. Citing *Sanders v. United States*, 373 U.S. 1 (1963), as precedent for how to determine whether grounds previously presented were substantially equivalent to those later pressed, the Court concluded the petitioner had not fairly presented the substance of his federal habeas claim to the state courts and, therefore, had not exhausted it. 404 U.S. at 278. In *Sanders*, the Court dealt with a motion under § 2255 and addressed the question of whether a prior ground could be considered the same as the current ground. The Court considered a stated ground of a coerced confession as embracing both physical coercion and psychological coercion. 373 U.S. at 16. Consequently, "identical grounds may often be supported by different legal arguments . . . and should doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the applicant." *Id.*

In this case, Ross properly raised the grounds of ineffective assistance of counsel and involuntary guilty plea in state court proceedings before seeking federal habeas relief. His claims are exhausted.

*IV. Facts*

The facts pertaining to Ross's case were set forth at length in the Court's prior memorandum opinion and will be summarized here briefly.

Ross was charged with assaulting five people, apparently while he was high on PCP.[2] The charges ranged from attempted first-degree murder down to second-degree assault and were charged as to each of the five victims. His lawyer did not think Ross's case was triable and his conversations with Ross revolved around whether he should plead guilty. Ross thought he might have a voluntary intoxication defense to the more serious charges. Defense counsel presented Ross with two memoranda of understanding ("MOU") regarding a proposed plea agreement. Ross signed the second one. The first MOU referred to five charges of first-degree assault, but the second MOU only referred to four charges, which seems due to one victim's having Alzheimer's disease and having no memory of the attack. The first, unsigned MOU was titled only "Memorandum of Understanding" and said:

> This is a Memorandum of Understanding concerning the possible sentence and likely plea position for charges faced by James Alan Ross.
>
> The higher level charges are attempted murder. There are five such counts, each of which carries an exposure of life in prison. The typical disposition for a case like this is consecutive sentences so that even if the sentence were imposed at twenty (20) years per crime, there would be an exposure of one hundred (100) years of actual jail time.

---

[2] Phencyclidine.

> The alternate offense is first degree assault. This offense carries similar penalties per offense.³ The guidelines range anywhere from nine (9) years to twenty (20) years per assault, meaning that the guideline would provide for between forty-five (45) years and one hundred (100) years of incarceration.
>
> There is a tentative agreement with the prosecutor that any plea agreement would involve a mandatory recommendation by the Judge for treatment at the Patuxent Institute [*sic*]. The Patuxent Institute [*sic*] is a facility operated by the Division of Corrections which provides counseling and therapeutic services to persons believed to have an opportunity to benefit from the treatment. The Patuxent Institution would receive Mr. Ross probably three (3) years after his confinement at DOC.
>
> The Patuxent Institute [*sic*] would hold Mr. Ross until it was felt that he was safe to resume life in the community. This could be several years. In fact, once Mr. Ross would be released from the Patuxent Institute [*sic*], he could be remanded to a Department of Corrections facility should he become involved in any other criminal activity, especially violent criminal acts.
>
> It is likely that Mr. Ross would be free in less than ten (10) years from the date of his original arrest should he be treated at the Patuxent Institute [*sic*] and should the Court recommend it as is the present understanding.
>
> I have discussed the forgoing memo with my attorney and I understand what it means.
>
> _____  _____
> James Alan Ross, Sr.                              Date

(Resp. Ex. 10, Pet. Postconv. Relief, Ex. D.)

The second MOU was signed by Ross and said:

> <u>MEMORANDUM OF UNDERSTANDING ON PLEA AGREEMENT</u>
>
> I, James Ross, hereby instruct my attorney as follows with regard to any plea agreement:
>
> 1. I agree to plead guilty under Alford vs. North Carolina to four counts of first degree assault without a "cap" on the sentence. I do not want a "cap" on the sentence because I believe that the guidelines may be more beneficial than a preset "cap" or other agreement which may

---

³ As noted in the Court's first memorandum opinion, defense counsel was incorrect about the potential sentence for first-degree assault. But the one-hundred-year figure was correct overall as the maximum exposure for the four counts of first-degree assault to which Ross eventually pleaded was one hundred years (twenty-five years per each of the four counts). (*See* Mem. Op. 13 n.10, ECF No. 18.)

7

require my incarceration for a longer period of time than would be otherwise available to me.

2. I understand that my attorney and the State's Attorney have agreed that the Judge will make a binding recommendation for treatment at the Patuxent Institution.

3. I understand that I will be in a Maryland prison for several years after I am sentenced. I also understand that with the recommendation by the Judge that I be dealt with at the Patuxent Institution, I will be transferred under the Department of Corrections to that facility after several years in the penitentiary. I expect that I will be in the Patuxent Institution for several years.

4. My attorney and the State's Attorney, according to my attorney, believe that I will be in the Maryland prison system, both Patuxent and conventional prison, for a period of somewhat less than ten years. Neither my attorney nor the State's Attorney nor I have complete knowledge of the way in which my referral to the Patuxent Institution will be handled.

|  (signed)  | 4/5/04 |
|---|---|
| James Allen [*sic*] Ross, Sr. | Date |

(Resp. Ex. 10, Pet. Postconv. Relief, Ex. E.)

Ross pleaded guilty two days after he signed the second MOU. At the plea hearing, he signed a "Plea/Sentence Agreement," which indicated that Ross was entering an *Alford* plea[4] to four counts of first-degree assault and that the court would recommend Ross be held at Patuxent, but that otherwise the court had full discretion as to sentencing. (Resp. Ex. 3.) Defense counsel, the prosecutor, and the judge also signed it. At the plea hearing, Ross was correctly informed that the maximum exposure for the four counts of first-degree assault was one hundred years. (*Id.* Ex. 2, Plea Hearing Transcript 7.) He was sentenced to seventy years. (Resp. Ex. 4, Sentencing Hearing Transcript 23.)

---

[4] *North Carolina v. Alford*, 400 U.S. 25 (1970).

*V. Analysis*

Although this memorandum opinion incorporates the Court's first memorandum opinion in this case, some points bear repeating and amplification.

The standard for evaluating whether a defendant in a criminal case has received the effective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.

*Id.* at 687-88. In addition to this performance standard, a defendant must show prejudice resulting from the deficient performance:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* at 694.

In the context of plea proceedings, the performance standard remains the same, but the prejudice prong of the test was enunciated by the Supreme Court as "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Court emphasized that this inquiry should be conducted "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695). Thus, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485 (2010).

That the voluntariness of a guilty plea depends upon a defendant's receiving effective assistance of counsel was stated unequivocally in *Hill*:

> Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases."

474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). *See also Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012) (noting Court's earlier rejection in *Padilla* of state's argument "that a knowing and voluntary plea supersedes errors by defense counsel" (citing *Padilla*, 130 S. Ct. at 1486)); *Tollett v. Henderson*, 411 U.S. 258, 264 (1973) (defendant's plea of guilty based on reasonably competent advice is intelligent plea). Thus, Ross's claim of ineffective assistance of counsel is inextricably linked to his claim of an unknowing and involuntary guilty plea.

As noted in this Court's earlier opinion, Ross clearly received ineffective assistance of counsel when his defense attorney affirmatively misled him as to what sentence the prosecutor expected Ross to receive and how it was to be executed. In fact, Ross's defense counsel had no idea if the prosecutor even had an expectation or what the expectation was. This misleading advice was compounded by the equally misleading advice as to defense counsel's own expectations of a likely sentence for Ross since defense counsel's expectations impliedly rested on a rational basis, later found not to exist. But the first aspect is more egregious because a criminal defendant, informed that a prosecutor expects a particular sentence to be imposed, is likely to conclude that a prosecutor would only have such an expectation in certain circumstances, such as, if the prosecutor intended to act consistently with that expectation, thus suggesting to the defendant that a deal had been reached on what the prosecutor would argue at a later sentencing proceeding. Or, if the prosecutor expects a certain sentence to be imposed, then presumably, regardless of whether a deal had been made as to what he intended to advocate at the time of sentencing, his expectation would be a product of his experience and the known

record of the sentencing judge in similar cases. The point is, a defendant relies upon his attorney's advice in deciding whether to plead guilty, and, here, the advice was colored by and given additional weight by the misrepresentation as to the prosecutor's expectation of the sentence to be imposed. It would be pointless for defense counsel to communicate this information to his client unless defense counsel intended for the defendant to consider it as material to the decision whether to plead guilty.

The facts in the instant case bear remarkable similarity to those underlying the Fourth Circuit's decision in *Ostrander v. Green*, 46 F.3d 347 (4th Cir. 1995), *overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996) (*en banc*). In *Ostrander*, defense counsel made rosy predictions about the likely sentence and the assistance counsel would get from law enforcement authorities to grant Ostrander work release; he also represented to Ostrander that his sentence would be capped at three to five years and that the prosecutor would not oppose work release. Defense counsel's advice implying that Ostrander was eligible for work release and that he had a very good prospect of receiving it soon after sentencing was unrealistic. 46 F.3d at 355. Ostrander was not eligible for work release and a minimal amount of research by defense counsel would have informed him of that. The Court had no difficulty in concluding that Ostrander had received ineffective assistance of counsel:

> We think that this misadvice falls well below the range of competence we must expect from defense lawyers. . . . There is a difference between a bad prediction within an accurate description of the law and gross misinformation about the law itself. If the lawyer simply underestimates the sentence, there may not be ineffective assistance. . . . We cannot expect criminal defense lawyers to be seers, but we must demand that they at least apprise themselves of the applicable law and provide their clients with a reasonably accurate description of it.

*Id.* at 355. This element of gross misinformation was also present in *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979), where defense counsel provided, prior to his client's guilty plea, notably inaccurate information regarding a parole eligibility date and, as was the case later in *Ostrander*,

11

the defendant relied upon the advice in deciding to plead guilty. Consequently, the Court said, "When the erroneous advice induces the plea, permitting him to start over again is the imperative remedy for the constitutional deprivation." 611 F.2d at 65. *See also Richardson*, 397 U.S. at 772 (recognizing incompetent advice from attorney as proper ground for federal habeas attack on voluntariness of guilty plea in state court); *United States v. Fisher*, 711 F.3d 460, 2013 WL 1286985, at *4 (4th Cir. 2013) (recognizing defense counsel's misrepresentations can undermine validity of guilty plea (citing *Tollett v. Henderson*, 411 U.S. at 266-67)).

Not only does Ross's case include gross misinformation (defense counsel's prediction as to Ross's eligibility for Patuxent when he had no idea if Ross would be favorably considered for admission to Patuxent and his prediction that Ross would likely serve less than ten years), but it includes the additional element of intentional misrepresentation by defense counsel as to the prosecutor's expectations. It was bad enough that defense counsel's expectations were unrealistic and bordered on fantasy, but then they were given false credence by the misrepresentation as to the prosecutor's expectations. Upon this infirm and defective foundation, counsel's advice to plead guilty became persuasive, and Ross accepted it.

The evidence is unrefuted that Ross would not have pleaded guilty if he had thought he would wind up with the lengthy prison sentence he received following his plea. (Resp. Ex. 12, State PC Court Hearing Transcript 111-12.)[5] And a choice to go to trial would have been rational. At the time he was sentenced, Ross was fifty-five years old. According to the Social Security Administration's Period Life Table for 2007, a fifty-five-year-old man would have a life expectancy of roughly twenty-five more years, in other words, to age eighty.[6] Faced with the

---

[5] A fair reading of Ross's counsel's testimony at the postconviction hearing leads to the conclusion that it validates Ross's assertion.

[6] http://www.ssa.gov/oact/STATS/table4c6.html (accessed on April 29, 2013). Ross was sentenced in 2004.

12

choice to plead guilty and be subject to one hundred years in prison or to go to trial and be subject to multiple life sentences if convicted, Ross honestly could expect to breathe his last breath either way while in prison. But if his voluntary intoxication defense had been successful and he had been convicted of five counts of second-degree assault, then his maximum exposure would have been just fifty years, with parole eligibility after serving half.[7] (Resp. Ex. 12, State PC Court Hearing Transcript 131.) He might get out before dying. In short, he had nothing to lose by going to trial. *See United States v. Lewis*, No. 10-7475, 477 F. App'x 79 (4th Cir. 2012) (unpublished) ("Lewis had something to gain by going to trial—the possibility of an acquittal on some or all of the counts—but nothing to lose"; defense counsel's plainly deficient advice negated Lewis's reason to plead guilty). *See also Ostrander*, 46 F.3d at 356 ("A reasonable defendant sitting in jail and facing a difficult decision that may subject him to many more years of the same could certainly be swayed by [defense counsel's] confident, though grossly uninformed, prediction that he would probably be breathing free air within days.")

Thus, reiterating the Court's earlier conclusion, Ross has established both prongs of the *Hill v. Lockhart* standard. He has demonstrated his counsel's performance was deficient and he has demonstrated a reasonable probability that, but for his counsel's errors, he would have gone to trial instead of pleading guilty. As a result, Ross received ineffective assistance of counsel and his guilty plea, induced by the material misadvice of his counsel, was not a voluntary, knowing, and intelligent plea. Under pre-AEDPA law, Ross would clearly be entitled to relief. The question remains as to whether he is entitled to relief under the stricter standards of AEDPA.

Several circumstances compel a conclusion that, even under the more restrictive AEDPA standards, Ross has established a clear entitlement to relief. First, the postconviction court made

---

[7] Ross testified that he had learned from other inmates that he could expect to serve half of the prison sentence before being released. (Resp. Ex. 12, State PC Court Hearing Transcript 100-02.)

a factual finding to the effect that the April 5, 2004, MOU (signed by Ross) "appears to have outlined his motivation for entering the pleas and his understanding of the context in which he was acting." (Resp. Ex. 13, Opinion and Order 6.) The court further found that this document "confirm[s] Ross' statement that he was led to believe that the plea and sentencing agreement would result in incarceration for something less than 10 years." (*Id.*) These factual findings stand in stark contrast to the court's conclusion that Ross received effective assistance of counsel and "fully understood and intelligently and voluntarily entered the pleas." (*Id.* 7.) Indeed, these findings support Ross's claims. As a consequence, the state postconviction court's conclusion was objectively unreasonable. Additionally, the state court never addressed the prejudice part of the standard for effective assistance of counsel, so no deference is owed to the state court on that point.

Second, counsel's own testimony revealed he never explained to Ross the difference between a referral to Patuxent and a guarantee that Ross would go to Patuxent. (Resp. Ex. 12, State PC Court Hearing 46.) Third, hand in hand with the absence of such an explanation is the existence of the MOU itself. It is presumed that defense counsel presented the MOUs to Ross because he wanted Ross to perceive that they mattered in the plea bargain process. Ross testified as much; he thought the April 5 MOU was part of the plea agreement (*id.* 104, 119-20), and he believed the prosecutor was "on board" with the ten years the MOU mentioned (*id.* 109-10). It was reasonable for Ross to believe the April 5 MOU was part of the plea agreement not only because his lawyer presented it to him in that light but also because it was not inconsistent with the written Plea/Sentencing Agreement signed in open court. And it was just as reasonable for Ross to rely upon defense counsel's representations as to his and the prosecutor's sentencing expectations. This reliance was valid even though no one guaranteed a specific outcome, as the state court found (*id.* 6).

Fourth, the state court failed to explain the basis for its peremptory conclusion rejecting Ross's claim of ineffective assistance of counsel. Thus, its conclusion on this point rested upon "thin air." *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000) ("If a state court's finding rests on thin air, the petitioner will have little difficulty satisfying the standards for relief under § 2254[(e)(1)]"; addressing question of whether petitioner had rebutted state court's findings by clear and convincing evidence), *cited in Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013). The state court said, "Although Ross' hope of acceptance by Patuxent and the attendant, but speculative, spectre of less active incarceration were not realized, the evidence before me fails [to] demonstrate that defense counsel's services were other than at or above the level of competence expected. James Alan Ross categorically was not deprived of effective assistance of counsel in this case." (*Id.* 7.) The court made no factual findings as to whether the material misadvice that Ross received and on which he relied "was within the range of competence demanded of attorneys in criminal cases," *Richardson*, 397 U.S. at 770-71. But as this Court stated in its prior memorandum opinion,

> The finding of the postconviction court that Ross was misled by counsel about an obviously material matter is irreconcilable with its conclusion that Ross had effective assistance of counsel. Under no prevailing norm of professional conduct of which this court is aware is defense counsel permitted to make an intentional misrepresentation to his client about the prosecutor's expectation of a likely sentence in order to induce his client's guilty plea.

(Mem. Op. 20.) Bluntly, defense counsel may not lie to his client to persuade him to do what counsel "knows" is in the client's best interest. And fair-minded jurists could not disagree about that standard of professional conduct. Moreover, the record evidence commands a conclusion of ineffective assistance of counsel. Therefore, the state court's conclusion to the contrary is objectively unreasonable.

Fifth, while a plea colloquy can correct an attorney's misadvice, and thereby negate a claim of ineffective assistance of counsel, *see Frye*, 132 S. Ct. at 1406-07 (noting opportunity at plea entry proceedings to remedy deficient advice by defense counsel); *United States v. Akinsade*, 686 F.3d 248, 253 (4th Cir. 2012) ("A defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment."), that did not occur at Ross's plea proceeding. Neither the written plea agreement presented to the state trial court nor the plea colloquy touched on what sentence the prosecutor expected to be imposed or on what the prosecutor intended to request in the imposition of sentence or, for that matter, defense counsel's roadmap, so to speak, in the MOU about Ross's expected course through Maryland's correctional system. Thus, the plea colloquy failed to cure the material misadvice and misrepresentation by defense counsel. *Akinsade*, 686 F.3d at 255 ("[I]n order for a district court's admonishment to be curative, it should address the particular issue underlying the affirmative misadvice."). Consequently, the state court's conclusion that either Ross entered a voluntary, knowing, or intelligent plea or he lied to the judge who presided over his plea of guilty is without factual foundation. Nothing in the record shows Ross lied. The statements he made at his plea proceeding were consistent with his understanding of the plea agreement, and he was never asked about the prosecutor's expectations, defense counsel's expectations, or his own expectations (based on his counsel's advice) at sentencing. The state court's conclusion that Ross's plea was voluntary, knowing, and intelligent—apparently premised on its finding of effective assistance of counsel and its statement that Ross must have lied at the plea colloquy—is objectively unreasonable.

*VI. Conclusion*

In summary, Ross has demonstrated he received ineffective assistance of counsel, and his guilty plea, which was induced by his counsel's material misadvice and misrepresentations, was not a voluntary, knowing, or intelligent plea. Further, the state postconviction court's conclusions to the contrary are objectively unreasonable, a matter about which fair-minded jurists cannot disagree. Consequently, the state postconviction court unreasonably applied clearly established federal law in deciding Ross's claims. Thus, Ross is entitled to this Court's grant of the writ of habeas corpus. Relief will be granted by separate order.

DATED this <u>1st</u> day of May, 2013.

BY THE COURT:

/s/
James K. Bredar
United States District Judge